UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA,**

v.  Case No. 3:07-cr-00048-HLA-MCR

**KASSIAN MARITIME NAVIGATION AGENCY, LTD.,**

## DECLARATION OF IOANNIS LIOKOURAS

I, **Ioannis Liokouras**, pursuant to Section 1746 of Title 18 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I am an individual of sound mind and body, and have never been convicted of a crime of moral turpitude.

2. I submit this Declaration in support of Defendant KASSIAN MARITIME NAVIGATION AGENCY, LTD.'s (hereinafter "KASSIAN") Motion for the Early Termination of Probation.

3. I am a citizen and resident of Greece. I have worked for KASSIAN for nearly fifty (50) years, both at sea and as part of the shore-side management team.

4. I make this Declaration based upon my personal knowledge, official company records, my own investigations, and observations.

5. I accepted the role and responsibility of serving as KASSIAN's Corporate Compliance Manager (hereinafter "CCM") following the detention of the M/V NORTH PRINCESS at Jacksonville, Florida. Since such time, I have personally undertaken to ensure the prompt and effective implementation of a comprehensive Environmental Compliance

Program (ECP) and a state-of-the-art Environmental Management System (EMS) manual.

6. Our goal was not only to comply with the terms of the plea agreement and the compliance program negotiated by our lawyer, but also to create a comprehensive, sustainable corporate commitment to environmental compliance for generations to come.

7. I have overseen the full implementation of our effective, comprehensive compliance program, which goes way beyond what was required in the plea agreement. At all times, I have received complete and total support from KASSIAN's directors and shareholders, as well as both our shore-side and shipboard staff.

8. Upon the finalization of the plea agreement in this case, former senior Coast Guard officer, Captain Richard Wigger, was immediately appointed by KASSIAN and approved by the government to serve as KASSIAN's Independent Environmental Compliance Consultant (IC).

9. Mr. James H. Sanborn was also appointed by KASSIAN and approved by the government to serve the dual roles of Court Appointed Monitor and Third Party Auditor (CAM/TPA), as outlined in the negotiated ECP.

10. KASSIAN arranged to have the Initial Environmental Reviews of the fleet of vessels and shore-side office completed promptly.

11. Upon the publication of the IC's Report of Findings, I personally travelled to meet with both the IC and the CAM/TPA to review the Report and to obtain additional recommendations for KASSIAN's ECP and the EMS manual I was preparing.

12. By February 18, 2009, I, on behalf of KASSIAN, had developed and implemented a comprehensive EMS manual that purposefully went well beyond the minimum

requirements of the ECP and more importantly, would be effective and practical to implement in the commercial environment our fleet operates.

13. Again, as stated above, this was done in order to create a sustainable environmental compliance program that would continue well beyond the period of probation.

14. Such efforts subsequently proved to be significant in assisting KASSIAN to obtain and achieve the prestigious ISO 14001 certification.

15. Upon completion of the EMS manual, we immediately sent copies of the manual to all KASSIAN operated vessels.

16. I personally visited <u>each</u> vessel multiple times at ports and terminals around the world over the past two (2) years to train our crews and ensure that the shipboard staff fully understand and are compliant with the company's environmental protection and compliance policies and procedures. Also, all senior officers are now required to attend a training course before being permitted to go to work on board our ships.

17. KASSIAN continues to regularly supplement the EMS manual with fleet-wide bulletins, updates, and refresher notices to staff, as necessary and appropriate.

18. In addition, I have developed a series of systems to assist our shore-side staff to oversee and control shipboard operations. Specifically, KASSIAN office staff maintains daily communication with each vessel. All vessels are required to report to shore-side supervising staff every two (2) days and provide KASSIAN with an accounting of the amount of bilge water and sludge remaining on board the vessel.

19. KASSIAN has also implemented a company-wide policy requiring shipboard staff to request and receive permission from the office in order to operate the Oily Water Separator and the Incinerator to ensure there are no unauthorized and/or illegal

discharges of oily waste to the sea. Updates are then provided from the vessel confirming the amount discharged or incinerated respectively. Shore-side staff then completes independent calculations to make sure all records are accurate.

20. In short, the systems we have developed and implemented are a comprehensive system of "checks and balances" to ensure total environmental compliance and accountability for same.

21. During the course of KASSIAN's probation, I have personally been to the United States <u>and</u> to Jacksonville, Florida multiple times to visit our vessels and to meet with the IC and TPA/CAM.

22. During each visit to the southeast United States, I have offered to meet with the probation office in Jacksonville on behalf of KASSIAN as CCM. For reasons which I cannot explain, my offer was never accepted (or even acknowledged) by the probation office.

23. In anticipation of the two (2) year anniversary of the entry of the plea agreement and sentence, I, on behalf of KASSIAN, instructed our counsel (in April of 2009) to contact and approach the government with a view to obtaining consent for the instant application for the early termination of probation.

24. Clause 9 of the plea agreement was a key clause during the negotiation and conclusion of the plea agreement. In fact, the agreement was approved on the basis that KASSIAN would be able to terminate probation without objection after twenty-four (24) months; so long as the ECP had been complied with.

25. The government expressly agreed that it would not unreasonably withhold its consent to this motion.

26. Notwithstanding, during the course of the exchanges with the government, it quickly became clear that the relevant government personnel who had been involved in this case had moved on to the private sector.

27. It was also evident that no one from the Department of Justice, Coast Guard, or local probation office had been following KASSIAN's efforts and progress over the past two (2) years. Perhaps more surprising, <u>no one</u> from the government even appeared to be familiar with the specifics of the case.

28. In order to assist the government get up to speed, KASSIAN, at its own cost and expense, graciously offered and undertook the task of coordinating a meeting in Washington D.C. with the new government representatives to review the case; to advise on the extraordinary efforts and results Kassian has achieved; and to answer any questions the government (i.e. the newly assigned Department of Justice and US Coast Guard personnel) had.

29. On August 12, 2009, following a long series of exchanges with the Department of Justice, KASSIAN, at its own substantial cost and expense, arranged for myself (as CCM), Captain Wigger (IC), Mr. Sanborn (CAM/TPA), (and KASSIAN's counsel), to attend a meeting in Washingtion D.C. at the Department of Justice Environmental Crime Section's office. During the meeting, I advised the government of the practices and procedures implemented by KASSIAN and answered any and all questions the government representatives posed.

30. Messers Wigger and Sanborn also did the same. In fact, both Messers Wigger and Sanborn unequivocally stated that, in their expert opinions, KASSIAN's efforts and

5

results were extraordinarily good. Both have said that early termination of probation would be appropriate in this matter.

31. During the meeting, AUSA Joseph Poux even remarked that this meeting was fruitful for the government because no other ship operator has ever met with the government to discuss and explain the practical challenges, as well as the "do's" and "don'ts", of implementing an effective, comprehensive Environmental Compliance Plan in the competitive commercial shipping market.

32. Additionally, I on behalf of KASSIAN, presented the government with a detailed summary of the numerous steps, programs, and proprietary systems we have undertaken, which have greatly exceeded the minimum terms of the ECP and have been instrumental to our success.

33. Following the meeting, the government requested and counsel, on behalf of KASSIAN, provided two (2) supplemental letters (with exhibits) to provide a further written description and examples of the procedures that have been successfully implemented by KASSIAN. See August 24, 2009 and September 2, 2009 letters attached hereto as Exhibits "A" and "B" respectively.

34. Despite production of this supplemental proprietary information/documentation requested by and provided to the government, as well as additional offers to make myself available to discuss and/or explain any of the supplemental information/documentation provided, no one from the government ever followed up or provided any further inquiries.

35. A series of exchanges followed between our Counsel and AUSA Poux; a copy of which is attached hereto as Exhibit "C."

36. I, and our lawyer, have repeatedly explained to the government why we are undertaking the cost, expense, and indignity of litigating the early termination issue with the government.

37. We certainly could have met the minimum standards of the plea agreement, however, we took a conscious choice to go above and beyond to train our people to avoid ever having any environmental compliance issues again.

38. Our team has worked extremely hard to achieve this goal and to ensure a corporate culture which values and emphasizes environmental stewardship. In fact, I am told by both Captain Wigger and Mr. Sanborn that we have done the "best" job of any shipping company that has ever been involved in a similar case.

39. While it would be much easier, cheaper, and convenient for our company to just sit on the "sidelines" and let the remaining few months of probation tick off the calendar, I believe it would be a serious mistake for us to do so.

40. Rather, I believe it would be a fair and significant reward to my staff for the U.S. authorities to acknowledge their outstanding and unparalleled efforts and achievement.

41. Also, I believe that the early termination of KASSIAN's probation would serve to further the universal public policy goal of protecting the marine environment and reinforcing the shipping industry's obligations toward environmental stewardship.

42. On the other hand, I believe that by failing to recognize the company's extraordinary efforts and achievement would powerfully serve to undermine the goal of environmental compliance and seriously discourage similarly situated shipping companies from doing anything beyond the bare minimum.

43. Regretfully, and for reasons that remain unclear, the government has unreasonably refused to consent to KASSIAN's motion.

44. Again, KASSIAN has not only fully complied with the plea agreement and terms of the ECP, but has greatly exceeded the requirements agreed between the parties.

45. There can be little dispute that KASSIAN now serves as a role model for other similarly situated shipping companies. In fact, I have voluntarily shared the benefit of our experience with another company who has recently begun probation for a similair offense.

46. The government has unreasonably refused to join this application, and more puzzling, have wholly failed to offer any reason why they have done so.

47. For the reasons set forth above; in the accompanying declarations and in the accompanying memorandum of law, I on behalf of KASSIAN respectfully request this Honorable Court to grant this emergent motion for early termination of probation.

I hereby declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge.

September 30, 2009
Athens, Greece

Captain Ioannis Liokouras