# EXHIBIT A



CHALOS & Co, P.C.
International Law Firm

123 South Street, Oyster Bay, New York 11771
TEL: +1-516-714-4300 • FAX: +1-516-750-9051 • WEB: www.chaloslaw.com

George M. Chalos
ATTORNEY AT LAW

DIRECT: +1-516-714-3040
MOBILE: +1-516-721-4076
EMAIL: gmc@chaloslaw.com

August 24, 2009

<u>*Via Email and Facsimile (202) 305 0396*</u>

U.S. Department of Justice
Environment and Natural Resources Division
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington D.C. 20026-3985

Attn:   Joseph A. Poux, Jr., Esq.

Re:   Kassian Maritime Navigation Agency, Ltd.
      United States v. Kassian Maritime Navigation Agency, Ltd.
      07-cr-00048 HLA-MCR, Middle District of Florida, Jacksonville Division
      Chalos & Co. Ref: 2007.001

Dear Mr. Poux:

      First, please allow me to thank you for your assistance and efforts to facilitate our meeting on Wednesday August 12, 2009. We believe it was fruitful for Kassian Maritime Navigation, Agency, Ltd. ("Kassian") to share with the Department of Justice and the Coast Guard its ECP experience and particularly the uniquely excellent progress and systems they have developed during the past two (2) years.

      As you know, Kassian would very much like to work cooperatively with the government to submit an unopposed motion for the early termination of probation. As way of background and as discussed at the meeting, during the time leading up to the trial setting in July 2007, it was agreed between the government and Kassian that the appropriate term of probation would be two (2) years. That period was based, *inter alia*, upon the unique circumstances of the case. Notwithstanding, and although an agreement had been reached in principal, the government reversed course and stated that it was unable to agree to a term of two (2) years and, instead, would require the standard probationary term of three (3) years. In the spirit of cooperation, it was then agreed that thirty (30) months would be appropriate, with the express proviso that once the Environmental Compliance Plan (ECP) was fully implemented and after the expiry of twenty-four (24) months, Kassian would have an express right after twenty-four (24) months to move unopposed for the early termination of probation consistent with 18 U.S.C. § 3564. *See* Plea Agreement, Clause 9. This is, of course, a unique



agreement in these types of cases and, for the reasons more fully set forth, wholly appropriate here.

It appears common ground that early termination of probation under 18 U.S.C. § 3564, is warranted in special situations where a defendant shows changed circumstances, such as exceptionally good behavior and that the early termination is in the interest of justice. As discussed at the meeting, Kassian has easily met the standard for early termination. For your convenience, we highlight in detail below a number of the supplemental actions taken by Kassian, which we believe are supportive of its extraordinary good behavior and the early termination of probation.

## Early Implementation of Environmental Management System Manual and Procedures

- Kassian accelerated the development and implementation of the EMS Manual. Pursuant to the terms of the ECP, Kassian proposed and the government approved, Captain Richard Wigger and Compliance Systems, Inc as the Independent ECP Consultant (IC) on August 1, 2007. Captain Wigger submitted the Report of Findings on December 14, 2007. The ECP required the preparation and submission of the EMS Manual within six (6) months of receiving the Report of Findings.

- The EMS Manual was submitted to the government two (2) months later on February 18, 2008 and also distributed to Kassian's fleet of Vessels at the same time. The ECP required the government to provide comments within ninety (90) days of receipt of the EMS Manual. No comments or objections were received and, as such, the EMS Manual was deemed approved by the government as of May 18, 2008.

- In anticipation of approval of the EMS Manual and to ensure the timely implementation of same, Kassian made its EMS Manual effective on the date of submission, February 18, 2008. The ECP required the EMS Manual to be fully implemented within nine (9) months of approval by the government. Section 12.2 of the EMS Manual required implementation within three (3) months of the effective date. Accordingly, the EMS Manual was actually implemented <u>twelve (12) months ahead of schedule</u> as per the ECP. This allowed the final audits to also proceed promptly.

- On September 17, 2007, James Sanborn (of Sanborn Yearwood & Associates) was appointed and approved by the government to act in the dual capacity as the Court Appointed Monitor (CAM) and Third Party Auditor (TPA). Mr. Sanborn completed the final audits of Kassian's eight (8) vessels between May 2008 and August 2009, and, in summary, has concluded that the requirements of the ECP have been complied with and exceeded.

## Requirements Implemented by Kassian EMS Manual which Exceed ECP

- Kassian EMS developed a comprehensive environmental policy which exceeds the requirements of the ECP. Additionally, Kassian developed an "ethics policy



statement" and non-retaliation policy statement, complementing the environmental policy statement. All policy statements have been published and posted throughout Kassian operated vessels and its office. All personnel are held <u>strictly</u> accountable for compliance.

- Kassian developed a Notice, which is posted at the gangway of each vessel while in port, to inform all shipboard visitors, vendors, and non-crewmembers of Kassian's environmental commitment and waste disposal procedures. There is no such specific requirement contained in the ECP.

- Kassian has developed comprehensive EMS familiarization procedures, supplementing the Safety Management System familiarization requirements. Familiarization is documented on separate forms for deck and engine department personnel – Form EMS 001 for Engine Department Personnel and Form EMS 002 for Deck Department Personnel. This procedure exceeds the requirements of the ECP.

- To ensure accountability and responsibility, Kassian developed a Statement of Environmental Commitment, which must be reviewed, understood, and signed by <u>each</u> crewmember upon reporting aboard. Upon sign-off, each crew member must sign a Declaration of Environmental Compliance, attesting that the signatories have no knowledge of any environmental violation(s) during their tour of duty that were not reported.

- Amended SMS Form C013 – Evaluation Form Seagoing Personnel to include a parameter for environmental awareness and conformity.

- Has carried out an extensive analysis to identify and evaluate environmental aspects related to the operation of Kassian vessels. Developed a listing of these environmental aspects as part of the EMS Manual and required periodic review by vessel crews during monthly shipboard safety and environmental committee meetings.

- Requires all Engineering Officers to complete form EMS 013 – Fleet Engineering Survey within three (3) months of joining a vessel. ECP only required a one-time initial survey. Kassian has made the requirement ongoing as part of its continuous improvement process.

- Initiated an environmental non-conformity identification and corrective measure process to include root cause analysis to prevent re-occurrence and also to prevent the occurrence of potential similar non-conformities.

- Developed a Leakage Logbook to track the engine room leakages and ensure timely correction.



- Developed procedures for the placing and tracking of environmental seals on critical flanges and valves, exceeding the requirements of the ECP.

- The EMS Manual requires the use of Primary Bilge Tanks to reduce the amount of potential oily waste in the source tank for the oily water separator.

- Requires all vessels to be fitted with an independent sludge pump and a bilge pump, regardless of build date, to reduce the occasions for oily sludge and bilge water to co-mingle.

- Requires a minimum of two (2) oil water separator spare filters to be available onboard each Kassian operated vessel.

- Developed detailed procedures for the strict accountability for the unlocking of the oily water separator overboard valve.

- Requires the use of a *Waste Water (Sewage) Discharge Log Book*, indicating positions and times when the overboard discharge valve is opened and closed, the sewage plant is started or stopped, chemicals are added, or maintenance is performed.

- Requires that an inventory of all flexible hoses 40mm in diameter or more, (in current use or stored aboard) to be maintained. A specific EMS form was developed for this purpose.

- Requires the use of a *Waste Oil/Sludge Discharge Log* to record when waste oil/sludge is incinerated or disposed of ashore. This is in addition to ensuring the proper entries in the ORB are also made.

- Developed an internal EMS audit procedure and checklist to verify each vessel's compliance with the procedures set forth in the EMS Manual and all other applicable environmental requirements.

- Captain Ioannis Liokouras, the Corporate Compliance Manager (CCM) has and continues to be personally "hands on" in the training, implementation, and compliance of Kassian's fleet of vessels with the EMS Manual. Captain Liokouras has visited all of the vessels multiple times over the course of the past two (2) years in his role as CCM to ensure accountability and that the crews and employees of Kassian understand the commitment by the company to environmental protection and will continue to do so.

### Shore-Side Measures and Oversight of Shipboard Operators

- Kassian requires each Vessel to request authorization to run the Oily Water Separator (OWS). Kassian's main office then provides authorization for the Vessel to run the


OWS during daylight hours <u>only</u>. The office then receives written confirmation from the Master of the Vessel and the Chief Engineer of the discharged quantity and the amount remaining on board.

- Every two (2) days, the Master is required to send the office an accounting of the Bilge Water and Sludge remaining on board.

- Kassian has implemented a policy of limiting the use of the incinerator to only in circumstances when it is absolutely necessary. Shipboard staff must request and receive permission from shore-side management in order to utilize the incinerator to burn sludge and other wastes. The office then receives confirmation from the Master of the Vessel and the Chief Engineer of the amount of sludge that has been burned.

- Kassian has implemented a fleet wide Log Book that tracks the amount of sludge, bilge, and amounts discharged (either through the above processes or ashore) for each vessel, that is updated every two (2) days.

- Kassian has pursued and obtained ISO 14001 certification, which requires environmental measures and standards beyond the scope of the ECP. Kassian has been audited for ISO 14001 and the Report confirms that the company and its managed fleet meet these extraordinary environmental certification standards.

Additionally, Kassian has made both outside compliance consultants, Captain Wigger (IC) and Mr. Sanborn (CAM/TPA), available to the government throughout the period of probation and during Kassisan's implementation of the EMS Manual and its compliance with the ECP. As was clear during the meeting last week, both consultants have shared their views that Kassian has not only met its obligations during the period of probation, but has been exceptional in its compliance and implementation of procedures and standards beyond the requirements of the ECP. Both consultants stated that, in their professional opinions, further audits are not necessary and that early termination is appropriate in this case.

Finally, as we discussed during the meeting, it is Kassian's continued goal to work with the government in this matter. We believe that this case represents a unique opportunity for the government to acknowledge and reward a company such as Kassian that has not only fully complied with the terms of probation, but that has exceeded the negotiated and agreed ECP requirements. Kassian has demonstrated its commitment to reform through the implementation of a comprehensive program that provides an effective model for environmental protection measures company-wide. The early termination of Kassian's probation would not only represent a simple and appropriate reward for a company that has exhibited exemplary good behavior, but would also set the bar for early termination appropriately high for future cases. Kassian's proprietary procedures could then be utilized by the government as a model for the government in future cases and, in our view, would serve as a "floor" for future cases, and not the "ceiling," which it currently is. As stated at the meeting, Captain Liokouras will remain available to visit with the government (at Kassian's cost and expense) to provide further details on the systems Kassian has developed

123 South Street, Oyster Bay, New York 11771 • TEL: +1-516-714-4300 • FAX: +1-866-702-4577 • WEB: www.chaloslaw.com


Chalos & Co.
International Law Firm

and effectively implemented in a commercially feasible way. Undoubtedly, this will be of interest and value to the government.

We trust the foregoing is clear and look forward to receiving the confirmation of the government's consent to Kassian's Motion for early termination of probation, (or alternatively, that the government will not oppose the Motion).

Again, we thank you for your time and attention to this matter and look forward to receiving your soonest reply.

Respectfully yours,

CHALOS & CO, P.C.

George M. Chalos

GMC/bps

cc: Captain Ioannis Liokouras, CCM
Kassisan Maritime Navigation Agency, Ltd.

Lt. Cdr. Ken Nelson *(Via Email)*
US Coast Guard

Capt. Richard C. Wigger, USCG (RET) *(Via Email)*
Compliance Systems, Inc.

James H. Sanborn *(Via Email)*
Sanborn Yearwood & Associates

123 South Street, Oyster Bay, New York 11771 • TEL: +1-516-714-4300 • FAX: +1-866-702-4577 • WEB: www.chaloslaw.com